UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 20-21535-CIV-MARTINEZ/AOR

BERNARD PIERRE,

    Petitioner,

v.

STATE OF FLORIDA,

    Respondent.
_____/

## REPORT AND RECOMMENDATION

THIS CAUSE came before the Court upon Bernard Pierre's ("Pierre" or "Petitioner") Petition for Writ of Habeas Corpus Filed Pursuant to 28 U.S.C. Section 2254 ("Section 2254 Petition") [D.E. 1]. This matter was referred to the undersigned pursuant to 28 U.S.C. § 636 by the Honorable Jose E. Martinez, United States District Judge [D.E. 6]. The State of Florida ("State" or "Respondent") has filed a Response to the Section 2254 Petition (hereafter, "Response") [D.E. 18]; an Appendix [D.E. 19]; and a Notice of Filing State Court Transcripts ("Transcripts") [D.E. 20]. After full consideration of these materials, the undersigned respectfully recommends that Pierre's Section 2254 Petition be DENIED.

## PROCEDURAL BACKGROUND

On April 4, 2011, Petitioner was charged by way of Information in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida, Case No. F08-29249B, with the following offenses:

    Count 3 -    aggravated assault with a firearm, in violation of Fla. Stat. § 784.021(1)(a).

    Count 4 -    possession of a firearm by a convicted felon, in violation of Fla. Stat. § 790.23(1).

    Count 5 -    burglary with assault or battery, in violation of Fla. Stat. § 810.02(2)(a).

    Count 6 -    corruption by threat against a public servant, in violation of Fla. Stat. § 838.021(3)(9).

See Information [D.E. 19-1 at 36-41]. After a jury trial, Petitioner was adjudicated guilty as to the offenses alleged in Counts 3, 4 and 6 and as to the lesser included offense of battery alleged in Count 5. See Judgment [D.E. 19-1 at 43-45]. On May 19, 2011, Petitioner was sentenced to a term of imprisonment totaling thirty years, as follows:

    Count 6 -    Five years.

    Count 3 -    Ten years, consecutive to Count 6.

    Count 4 -    Fifteen years, consecutive to Counts 3 and 6.

    Count 5 -    Three hundred and sixty-four days, concurrent with Count 4 (credit time served).

See Sentence [D.E. 19-1 at 47-53].[1]

Petitioner timely appealed the judgment and sentence. See Notice of Appeal [D.E. 19-1 at 55]. On appeal, Petitioner raised the following four grounds as a basis for reversal:

    I. The Transcript Does Not Indicate the Jury Was Sworn, Necessitating a New Trial.

    II. Trial Counsel Was Ineffective for Failing to Move to Sever the Charge of Possession of a Firearm by a Convicted Felon from the Other Counts.

    III. Trial Counsel Was Ineffective for Failing to Sever the Charge of Corruption by Threat from the Other Charges,

    IV. The Trial Court Erred in Denying the Motion for Judgment of Acquittal, Where There Was Insufficient Evidence That Mr. Pierre Intended to Influence the Officer's Performance of Their Official Duties.

See Initial Brief of Appellant [D.E. 19-1 at 58]. On December 24, 2014, the Third District Court

---

[1] The state court thirty-year term of imprisonment was imposed to run consecutively to a federal sentence imposed on Petitioner in Case No. 08-20794-CR-MGC. Id. at 52. The federal sentence was imposed on July 22, 2009 and consisted of 63 months. See Judgment [Case No. 08-20794-CR-MGC, D.E. 112].

2

of Appeal issued a per curiam opinion, affirming Petitioner's "conviction without prejudice to [his] making a timely and proper motion seeking postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850."  See Opinion [D.E. 19-1 at 156-57].  The mandate issued on January 9, 2015 [D.E. 19-1 at 159].

On January 5, 2016, Petitioner filed a Motion for Postconviction Relief and to Vacate Judgment and Sentence Pursuant to Fla. R. Crim. P. 3.850 (hereafter, "Rule 3.850 Motion") [D.E. 19-1 at 161-94].  As grounds for his Rule 3.850 Motion, Petitioner argued that his trial counsel had been ineffective by failing: (1) to sever the corruption by threat charge from the other charges; (2) to sever the charge of possession of a firearm by a convicted felon from the other charges, which allowed the jury to hear throughout trial that Petitioner was a convicted felon; and (3) to correct the trial judge on her misapprehension that Petitioner possessed an assault weapon during the commission of the felon in possession crime, which affected the trial judge's sentencing decision.  Id. at 181-92.  After conducting an evidentiary hearing, the post-conviction court denied the Rule 3.850 Motion in its entirety.  See Order Denying Defendant's Motion for Post-Conviction Relief, dated November 9, 2017 (hereafter, "Rule 3.850 Order") [D.E. 19-1 at 225-30].  Petitioner timely appealed the Rule 3.850 Order [D.E. 19-1 at 232].

The Third District Court of Appeal initially issued a per curiam affirmance.  See Opinion [D.E. 19-1 at 234].  However, upon Petitioner's motion, the Opinion was withdrawn, and the briefing schedule was restarted.  See Order [D.E. 19-1 at 246].  As grounds for appeal, Petitioner argued that his trial counsel had been ineffective for failing: (1) to move to sever the corruption by threat count from the other counts; and (2) to correct the sentencing court and point out that it was wrong that Petitioner had possessed an assault weapon, namely an AK-47.  See Initial Brief of Appellant [D.E. 19-1 at 269-80].  On December 26, 2019, the Third District Court of Appeal issued a per curiam affirmance [D.E. 19-1 at 314].  Thereafter, Petitioner filed a Motion for Rehearing or

3

for Written Opinion, which was denied [D.E. 19-1 at 316-25, 327]. The mandate issued on January 31, 2020 [D.E. 19-1 at 329].

Pierre filed his Section 2254 Petition on April 10, 2020, wherein he challenges the post-conviction court's determination that his trial counsel "did not act constitutionally ineffectively by failing to move to sever the corruption by threat to a public servant count from prosecution of the remaining counts of the information filed against him in Florida state court case no. F08-29249B." See Section 2254 Petition [D.E. 1 at 12]. The State acknowledges that the Section 2254 Petition appears timely. See Response [D.E. 18 at 25].

## APPLICABLE LAW

### *1.     Section 2254*

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Title 28, United States Code, Section 2254 provides, in pertinent part:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.
>
> (e)(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(d), (e)(1).

"The [AEDPA] modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions

are given effect to the extent possible under law." Bell v. Cone, 535 U.S. 685, 693 (2002) (citation omitted). "The AEDPA prevents defendants – and federal courts – from using federal habeas review as a vehicle to second-guess the reasonable decisions of state courts." Renico v. Lett, 559 U.S. 766, 779 (2010). "When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong." Woods v. Donald, 575 U.S. 312, 316 (2015).

Federal habeas "relief may be available if the state habeas court decision is 'contrary to' clearly established United States Supreme Court precedent." Hall v. Head, 310 F.3d 683, 690 (11th Cir. 2002). "Alternatively, 'if the state court confronts a set of facts that are materially indistinguishable from a [relevant Supreme Court decision and] arrives at a result different' from that decision, such a result is also contrary to Supreme Court precedent." Id. (internal citation omitted). Additionally, "a petition for habeas relief may also be granted if the state court decision involved an 'unreasonable application' of Supreme Court precedent." Id. at 691. Finally, "a state court's factual findings are presumed correct, unless rebutted by the petitioner with clear and convincing evidence." Putman v. Head, 268 F.3d 1223, 1241 (11th Cir. 2001) (citation omitted).

### 2. *Ineffective assistance of counsel.*

A claim for ineffective assistance of counsel under 28 U.S.C. § 2255 is subject to the two-pronged test set out in Strickland v. Washington, 466 U.S. 668 (1984). Strickland requires a criminal defendant to show that: (1) counsel's performance was deficient and (2) the deficiency prejudiced the defendant. Id. at 687.

As to the first prong, deficient performance means performance outside the wide range of professionally competent assistance. Id. at 690. The judiciary's scrutiny of counsel's performance is highly deferential. Id. at 689. "Because of the difficulties inherent in making the evaluation, a

5

court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Id. (citing Michel v. State of La., 350 U.S. 91, 101 (1955)). "In reviewing counsel's performance, a court must avoid using 'the distorting effects of hindsight' and must evaluate the reasonableness of counsel's performance 'from counsel's perspective at the time.'" Chandler v. United States, 218 F.3d 1305, 1316 (11th Cir. 2000) (quoting Strickland, 466 U.S. at 689). In order for counsel's performance to be considered unreasonable, it must be such that "no competent counsel would have taken the action that . . . counsel did take." Grayson v. Thompson, 257 F.3d 1194, 1216 (11th Cir. 2001) (emphasis omitted). "When courts are examining the performance of an experienced trial counsel, the presumption that his conduct was reasonable is even stronger" and the challenged actions may be considered sound strategy. Chandler, 218 F.3d at 1316 (footnote omitted) (citing Provenzano v. Singletary, 148 F.3d 1327, 1332 (11th Cir. 1998)); see also Strickland, 466 U.S. at 689.

As to the second prong, a defendant establishes prejudice by showing that, but for counsel's deficient performance, there is a reasonable probability the outcome of the proceedings would have been different. Strickland, 466 U.S. at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceedings. Id.

A defendant must satisfy both the deficiency and prejudice prongs set forth in Strickland to obtain relief on an ineffective assistance of counsel claim; failure to establish either prong is fatal and makes it unnecessary to consider the other one. Id. at 697. The Eleventh Circuit has recognized that, given the principles and presumptions associated with ineffective assistance claims, "the cases in which habeas petitioners can properly prevail are few and far between." Chandler, 218 F.3d at 1313 (alteration omitted) (quoting Waters v. Thomas, 46 F.3d 1506, 1511

6

(11th Cir. 1995)).  The burden of persuasion on the movant is preponderance of the evidence. Chandler, 218 F.3d at 1313.

## THE EVIDENTIARY HEARING PRECEDING THE RULE 3.850 ORDER

As noted above, prior to issuing the Rule 3.850 Order, the post-conviction court conducted an evidentiary hearing (hereafter, "Evidentiary Hearing"). See Transcript of Evidentiary Hearing (hereafter, "Transcript") [D.E. 20-2]. The following witnesses testified at the Evidentiary Hearing: Thomas Cobitz, Esq. ("Attorney Cobitz"), Petitioner's trial counsel, on behalf of the State; and Petitioner, on his own behalf. Id. at 3, 5, 62. Following is a summary of the witnesses' testimony that is relevant to the severance issue raised in the Section 2254 Petition.

### A.  *Attorney Cobitz*

1. Attorney Cobitz was appointed to represent Petitioner in the underlying criminal case.  At that time, Petitioner had already been convicted of the federal charges brought against him.

2. Attorney Cobitz counseled Petitioner regarding his right to testify in his own behalf in the underlying criminal case; and Petitioner indicated on more than one occasion that he wished to do so without any hesitation because he wanted to tell his side of the case.

3. Although Attorney Cobitz thought it was not a good idea for Petitioner to testify at trial, Petitioner insisted on doing so.

4. Additionally, the presiding judge engaged in a colloquy with Petitioner regarding his right to testify, during which Petitioner expressed no reservations about taking the stand.

5. According to Attorney Cobitz, Petitioner believed that the police were picking on him because his brother was in a gang and eventually made these feelings abundantly clear on the record.  Attorney Cobitz testified that he discussed Petitioner's testimony with him before he took the stand.

6. On cross-examination, Attorney Cobitz acknowledged that he did not file a written motion for severance, but he did file a motion for speedy trial based on Petitioner's request.

7. With regard to the decision not to file a motion for severance of the corruption by threat charge, Attorney Cobitz testified as follows:

> I knew what [Petitioner] was going to testify to. He was going to testify that the police were out to get him. They prosecuted him federally because of his brother. He wanted to say that they were all against him because of his brother.
>
> That's why we didn't sever out the threats against the public servant because he through it was going to go part and parcel as defense theory that the cops were making things up against him. They were just persecuting him because of his brother.

8. Id. at 15. According to the trial transcript, a Haitian officer testified that Petitioner had threatened to kill him when he got out. Id. at 18-19. Two other police officers also testified about threats made by Petitioner to them. Id. at 19-21.

9. One of the officers testified at trial that, at the police station, Petitioner was talking about the crime of burglary in progress and said that the perpetrators could make a bogus call and have the police officers "come with sirens in red and blue. They will be waiting inside with a machine gun and take us all out." Id. at 20. According to the officer, these comments by Petitioner were scary, adding, "Kill everybody and the process to it is scary. It is ongoing to try to search such someone you don't want to become a victim." Id.

10. Another officer testified that Petitioner called the firearms carried by police "pea shooters" and opined that the police were very underpowered. Id. at 22.

11. Attorney Cobitz acknowledged that he did not object to the officers' testimony and did not cross-examine them at trial. According to Attorney Cobitz, the officers' testimony

> went perfectly hand in hand with our [de]fense that cops were lying, and the cops were making this up because of his brother. His entire defense was all the cops were lying about him because of who he was because his brother was some leader of some street gang.

8

> So, if you look at it from our defense's strategy that the cops were making up this silly story that he was one of the Terrorist boys; that he was this mean horrible person. That's why I didn't want him to testify. I wanted to sever stuff out. You can tell from this very stuff, you can't tell this man what to do.

Id. at 24.

12. Attorney Cobitz acknowledged that he did not advise his client not to testify on the record, based on attorney/client confidentiality, but claimed to have talked about this issue with his client on the side.

13. Attorney Cobitz further testified as follows:

> Q. And you are saying the strategy for the jury to hear these allegations that Mr. Pierre was going to make a 911 call, wait for the police to come and then shoot and kill them with an AK 47?
>
> A. Yes.

Id. at 25. When asked why he did not question the officers about these allegations, and what strategy part that was, Attorney Cobitz responded: "That the cops were lying so much, it was so over the top that everybody could see that the police were just doing this because of whom Mr. Pierre thought he was." Id.

14. Nevertheless, Attorney Cobitz acknowledged that there was no reason for the jury to conclude that the officers were lying since he did not cross-examine them and allowed their testimony to come in undisputed.

15. Attorney Cobitz also acknowledged that the corruption by threat to a public servant count was clearly severable but claimed that he did not make a motion because Petitioner did not want him to do so.

16. Attorney Cobitz also acknowledged that he did not inform the court of any dispute with his client, stating:

> Why would I? I do what my client wants. I advise him. He doesn't have to listen. Mr. Pierre doesn't listen to when people tell him what's good for him. He wanted to do whatever he wanted to do. I advised him. He didn't want to do it.

Id. at 31.

17. Attorney Cobitz further testified that he wanted to talk to Petitioner about doing something concurrent with the federal case, but that Petitioner

> didn't want to hear about it. He wanted to put on the cops are lying on me because of who my brother is. They are all out to get me. He is a grown man. He is an intelligent man. He couldn't be quieted if he wanted me to tell him not to testify.
>
> He wanted to testify, he testified.

Id. at 32-33.

18. When asked if he had mentioned Petitioner's brother at any point in the trial, Attorney Cobitz responded, "I don't think so." Id. at 33.

19. When asked if Petitioner had talked about his brother during his trial testimony, Attorney Cobitz refused to testify. At that point, the State asked the post-conviction court to take judicial notice of the trial transcript portion that reflected Petitioner's trial testimony. A review of that transcript [D.E. 20-1 at 313-41] shows no mention by Petitioner of his brother.

20. When assessing the truthfulness of Petitioner's alleged threats against the victim of the other crimes and those against the police, Attorney Cobitz contended that this was why the counts should not have been severed, but that Petitioner should not have testified at trial, which he nevertheless did because he wanted to.

21. Attorney Cobitz again acknowledged that the corruption by threat to a public servant count should have been severed and that he would have done it, since it had nothing to do with the victim of the other charges.

22. Attorney Cobitz could not recall anything he said or did during trial to prepare the jury for the officers' statements regarding the corruption by threat to a public servant charge.

23. On re-direct examination, Attorney Cobitz testified that he had no basis to object to Petitioner's statements to the officers being entered into evidence.

24. Attorney Cobitz also testified that he recommended to Petitioner that he not testify, even though that was not done on the record; but repeated that he did what his client wanted to do. According to Attorney Cobitz, Petitioner "thinks he is the boss. He wants everybody to do things. He wants his way." Id. at 60. Moreover, according to Attorney Cobitz, as between a speedy trial and doing depositions, Petitioner was more interested in having a speedy trial.

### B. Petitioner

25. Petitioner testified that he had seen Attorney Cobitz twice before trial and that they had never discussed what Petitioner's trial testimony would be. According to Petitioner, the decision for him to testify was made right before the jury was selected.

26. Petitioner denied that the decision not to sever the corruption by threat to a public servant count was his, or that he was aware that the count could be severed, or that he and Attorney Cobitz had a conversation about severance, or that he had instructed Attorney Cobitz not to sever the count.

27. However, Petitioner admitted that he had told Attorney Cobitz that his legal strategy was to argue that the police had gotten his brother and were picking on Petitioner too, and to let every threat Petitioner allegedly made come into evidence at trial.

28. Petitioner claimed that he had two witnesses that were supposed to testify and that was it; he also claimed he was not supposed to testify.

29. According to Petitioner, Attorney Cobitz did not go over with him what his testimony would be or what point he would make in his testimony.

11

30. Petitioner denied having a grand plan for the jury to hear that he believed the police were fagots and that he was going to call 911 in order to show the jury that there was a police conspiracy against him. Petitioner denied knowing about the officers' testimony ahead of time.

31. On cross-examination, Petitioner testified that, when he was in the holding cell prior to trial, Attorney Cobitz told Petitioner he wanted Petitioner to testify.

32. Petitioner acknowledged that, in a colloquy with the trial judge, he told her that he wanted to testify.

33. Petitioner also acknowledged that he had testified that he had cursed the police officers and told one of them that their behavior was why they got shot.

34. On re-direct examination, Petitioner testified that Attorney Cobitz never told him that he was going to keep the corruption by threat to a public servant charge together with the other charges or that he had a right to separate that charge.

35. Petitioner denied having told Attorney Cobitz that the reason he did not want to separate the corruption by threat to a public servant charge from the others was that it would show a police conspiracy.

## **THE RULE 3.850 ORDER**

As previously noted, the only issue raised in the Section 2254 Petition is Attorney Cobitz's purportedly having provided Petitioner with ineffective assistance of counsel due to his failure to move to sever at trial the corruption by threat to a public servant charge from the other charges faced by Petitioner. With regard to this single issue, the post-conviction court found that Attorney Cobitz was not ineffective, as follows:

> Trial counsel testified at the hearing that the theory of defense to the charges was that the police were harassing the defendant because of his brother's gang affiliation. The transcript does not reflect that this defense was ever presented to the jury. Trial counsel did not address this defense during voir dire, opening statements, cross-examination of State witnesses, direct examination of defense

12

> witnesses or closing argument.  The defense that was actually presented as to this charge at trial was that the defendant's post-arrest comments directed at the officers and interpreted as threats by the officers, were made in anger because he had been wrongly arrested.  The defendant testified that some of the threats were not true and that others were not real threats.
>
> The defendant, therefore, would have to establish that the evidence regarding the firearm incident was unreliable and that the defendant was improperly arrested. This improper arrest would be the basis for the defendant's anger directed at the officers and his use of improvident words subsequent tot his arrest.  Under the defendant's theory of events, being tried on the corruption by threat charge alone would provide no explanation for his behavior towards the officers.  The jury would never learn of the allegedly weak reason for his arrest in the first place.  This theory of defense was a strategic decision made by the Defendant, and comes through clearly in his trial testimony and his attempts to minimize his behavior in this case. Trial counsel's decision to pursue this strategy cannot be deemed to be deficient performance.

See Rule 3.850 Order [D.E. 19-1 at 227].

## DISCUSSION

As noted above, Section 2254 provides that an application for a writ of habeas corpus with respect to a claim adjudicated on the merits by a state court may only be granted if the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  Moreover, "a determination of a factual issue made by a State court shall be presumed to be correct[;]" and the petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).

In his Petition, Pierre argues that the post-conviction court failed to reasonably apply Strickland, 466 U.S. 668, in assessing the effectiveness of Attorney Cobitz's

13

representation, thereby entitling him to issuance of a writ of habeas corpus pursuant to Section 2254. According to Petitioner,

> testimony that Petitioner "cursed out" the police officers who first detained, then arrested him, and later threatened to lure other officers to their doom via phony 911 calls, hoping for their assassination once at the scene, had absolutely no relevance to the remaining charges against him . . . . All the evidence did here was render Petitioner's trial on those [other] counts fundamentally unfair by giving his jury a legally improper reason to find him guilty of those charges. Under Florida law, his motion to sever the corruption by threat charge should have been granted, and thus the failure of his trial counsel, Thomas Cobitz, to so move was deficient performance because reasonably competent criminal defense counsel operating under prevailing professional norms would always move to sever a count not properly a part of an information, and any "strategy" to the contrary would be unreasonable on its face.

See Section 2254 Petition [D.E. 1 at 17] (citations omitted).

Contrary to Petitioner's contention, the post-conviction court's determination regarding Attorney Cobitz's performance was not contrary to the clearly established law articulated in Strickland and its progeny, or an unreasonable determination of the facts presented at the Evidentiary Hearing. As noted by the post-conviction court, "being tried on the corruption by threat charge alone would provide no explanation for [Petitioner's] behavior towards the officers." See Rule 3.850 Order [D.E. 19-1 at 227]. The post-conviction court further found that, "This theory of defense was a strategic decision made by the Defendant, and comes through clearly in his trial testimony and his attempts to minimize his behavior in this case." Id. Thus, in the Rule 3.850 proceedings, Petitioner did not overcome the presumption that, "under the circumstances, the challenged action 'might be considered sound trial strategy.'" Strickland, 466 U.S. at 689 (internal quotation omitted). As a result, it cannot be said that, contrary to the post-conviction court's conclusion, "no competent counsel would have taken the action that . . . counsel did take." Grayson, 257 F.3d at 1216.

Under Strickland, the post-conviction court's finding that Attorney Cobitz's performance was not deficient was sufficient to end the ineffective assistance of counsel analysis. Strickland, 466 U.S. at 697 (failure to establish either the deficiency or the prejudice prong is fatal and makes it unnecessary to consider the other one). Nevertheless, for the sake of completeness, the undersigned addresses the prejudice prong. Rule 3.152 of the Florida Rules of Criminal Procedure provides, in pertinent part:

> In case 2 or more charges of related offenses are joined in a single indictment or information, the court nevertheless shall grant a severance of charges on motion of the state or of a defendant:
>
> (A)   before trial on a showing that the severance is appropriate to promote a fair determination of the defendant's guilt or innocence of each offense; or
>
> (B)   during trial, only with defendant's consent, on a showing that the severance is necessary to achieve a fair determination of the defendant's guilt or innocence of each offense.

Fla. R. Crim. P. 3.152(a)(2). Although Petitioner contends that a motion for severance of the corruption by threat to a public servant charge should have been granted, the decision to do so would have been within the trial court's discretion. State v. Vazquez, 419 So. 2d 1088, 1090 (Fla.1982). Given Petitioner's insistence on a speedy trial, it cannot be said that the trial court would have granted such a motion. Moreover, the cases cited by Petitioner in support of his contention that a motion for severance, if made, should have been granted, see Section 2254 Petition [D.E. 1 at 17-18], are inapposite. Thus, Petitioner has not carried the burden of satisfying the Strickland prejudice prong.

In conclusion, given the principles and presumptions associated with ineffective assistance claims, this case does not fit in the rare category of "cases in which habeas petitioners can properly prevail . . . ." Chandler, 218 F.3d at 1313 (internal quotation omitted).

## **RECOMMENDATION**

Based on the foregoing considerations, the undersigned RESPECTFULLY RECOMMENDS that Pierre's Section 2254 Petition be DENIED.

Pursuant to Local Magistrate Judge Rule 4(b), the parties have **fourteen days** from the date of this Report and Recommendation to file written objections, if any, with the Honorable Jose E. Martinez, United States District Judge. Failure to file timely objections may bar the parties from attacking the factual findings contained herein on appeal. See Resolution Tr. Corp. v. Hallmark Builders, Inc., 996 F.2d 1144, 1149 (11th Cir. 1993). Further, "failure to object in accordance with the provisions of [28 U.S.C.] § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." See 11th Cir. R. 3-1 (I.O.P. - 3).

RESPECTFULLY SUBMITTED in Chambers at Miami, Florida, this 24th day of December, 2020.

                                                                                   ALICIA M. OTAZO-REYES
                                                                                   UNITED STATES MAGISTRATE JUDGE

cc:      United States District Judge Jose E. Martinez
          Counsel of Record